UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY C. MARTIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00380-JMS-MJD |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Petition for a Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Indiana prison inmate Anthony C. Martin petitions for a writ of habeas corpus challenging a prison disciplinary sanction imposed in disciplinary case number ISR 19-01-0142. For the reasons explained in this Order, Mr. Martin's habeas petition must be **denied**.

**A.     Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B.      The Disciplinary Proceeding**

On January 17, 2019, Indiana Department of Correction (IDOC) Correctional Officer

J. Locke wrote a Report of Conduct charging Mr. Martin with battery, a violation of the IDOC's

Adult Disciplinary Code offense A-102. The Report of Conduct states:

> On 17 January 2019 at approximately 1:20 pm, I, Officer J. Locke, escorted
> Offender Martin, Anthony #945288 (GH2C6) to his mental health appointment.
> While in route to his appointment, Offender Martin back kicked my left knee
> forcing it backwards and causing an extreme amount of pain.

Dkt. 11-1.

Mr. Martin was notified of the charge on January 18, 2019, when he received the screening

report. Dkt. 11-2. He pled not guilty to the charge, asked to call six witnesses, and requested video

evidence, medical records, and all narratives about the incident from computer drives. *Id.*

A hearing was held on February 19, 2019. Dkt. 11-4. The hearing officer reported what

Mr. Martin had said and done at the hearing in the "Offender's comment" section of the hearing

report:

> Did you review all requests? – Offender then became [argumentative], and would
> not proceed in hearing. Refused to continue past wanting irrelevant Nurse
> statements. Hearing was ended at that point by offender behavior. Lay Advocate
> present, but offender refused the use of him.

*Id.*

> The review of video evidence states:
>
> Upon reviewing the incident that occurred for case ISR 19-01-0142 I, Officer C.
> Cooke, did see:
>
> 1:18 pm Officer Locke restrains Offender Martin and escorts him from 6-2C to the
> medical exam room at the front of the range.
>
> The camera view is grainy so a clear picture can not be seen, but there is a
> commotion at the end of the range. Offender Martin can be seen making large
> movements until he goes down on the floor.

2

> Officer Locke can be seen trying to get offender off the floor. There is an obvious disturbance. Offender and Officer Locke end up inside the medical exam room at 1:19pm.

Dkt. 11-5.

The hearing officer considered his video review, the staff reports, and Mr. Martin's statements, and found Mr. Martin guilty of battery. He wrote: "Conduct is clear. Requested witnesses were not present. Grievance is irrelevant. Hard drive info confidential or non-existent. Nurse NOT present at incident. Preponderance of evidence." Dkt. 11-4 [sic]. Sanctions were imposed that included the loss of earned credit time and a demotion in earned credit time class. *Id.*

Mr. Martin appealed to the Facility Head and the IDOC Final Reviewing Authority, where both appeals affirmed the hearing officer's guilty decision, but the amount of earned credit time loss was reduced. Dkts., 11-7, 11-8, & 11-9. Mr. Martin then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The respondent filed his return and the disciplinary record. Mr. Martin filed a reply with the sworn declarations of several offenders attached as well as raising new grounds for relief. Dkts. 17 & 17-1. The respondent filed a surreply to Mr. Martin's reply. Dkt. 18. The petition is ripe for decision.

### C.    Analysis

In his petition, Mr. Martin asserts several grounds for habeas corpus relief. In his first ground, Mr. Martin contends he was denied due process of law when (a) he was denied 24-hour notice of the hearing, (b) he was denied the right to be at his hearing, (c) his hearing officer was not fair and impartial, (d) he was denied the right to call witnesses on his behalf, (e) he was denied the right to present evidence on his behalf, and (f) he was denied video evidence. Dkt. 1 at 2. In his second ground for relief, Mr. Martin contends (a) there was not sufficient evidence to support

the guilty decision, (b) no hearing was actually conducted, and (c) a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), occurred when evidence was withheld. *Id.* Mr. Martin contends in his third ground for relief that (a) the disciplinary charge against him was made in retaliation for grievances he had filed, and (b) Officer Locke imposed a "racial atmosphere" on his unit. Dkt. 1 at 3.

**Ground One**

Each of Mr. Martin's sub-grounds for relief in Ground One implicates a constitutional due process right in prison disciplinary hearings. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563-67. The disciplinary record demonstrates, however, that none of these due process protections was violated. First, Mr. Martin received more than 24-hours advance notice of the disciplinary hearing. *Id.* (due process requires at least 24-hours advance written notice). Mr. Martin was screened for the charge on January 18, 2019. Dkt. 11-2. The disciplinary hearing was held on February 19, 2019, more than one month after the initial notice. Dkt. 11-4. Mr. Martin's argument is without merit.

Second, Mr. Martin argues that he was denied the right to be at his hearing. Dkt. 1 at 2. Again, the record is contrary to Mr. Martin's argument. The hearing was commenced and Mr. Martin gave an initial statement and then began to argue. Dkt. 11-4. When he became abusive and disruptive, the hearing was terminated, but only after Mr. Martin had an opportunity to make his statement. *Id.* The Warden has provided the hearing officer's declaration concerning the disciplinary hearing. Dkt. 11-12. The hearing officer's testimony is that she "tried repeatedly to get [Mr.] Martin back on track and on topic. But [Mr.] Martin started to argue, cuss, and stage vulgar things to me. [Mr.] Martin also threatened to secrete bodily fluids in my face and threatened to gun me down." *Id.* at ¶ 7. Mr. Martin was thus present at the commencement of the hearing and started to present his case, but when he became disruptive the hearing officer ended the hearing.

4

Dkts. 11-4 & 11-12. As for any portion of the hearing that occurred after Mr. Martin left the presence of the hearing officer, Mr. Martin forfeited his right to be present with his disruptive behavior. *See Illinois v. Allen*, 397 U.S. 337 (1970) (defendant who became noisy, disorderly, and disruptive forfeited his right to be present at trial); *United States v. Benabe*, 654 F.3d 753, 769-70 (7th Cir. 2011) (same). Mr. Martin's argument that he was denied due process by not being allowed to be at his hearing is without merit.

Third, a prisoner facing administrative discipline is entitled to a hearing officer who is fair and impartial. *Hill*, 472 U.S. at 454. Mr. Martin accuses the hearing officer here of bias against him, but his petition does not explain the basis of that assertion. In his IDOC administrative appeals, he accuses the hearing officer of having pre-determined the case at the instruction of "higher authority." *See* dkt. 11-7. That specific argument is not before the Court because it was not included in the petition.

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The "constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666.  Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667. There are no such allegations here, and no evidence in the disciplinary record suggests impermissible bias. Mr. Martin's contentions in this regard are without merit.

5

Fourth, Mr. Martin contends he was denied the right to present witnesses in his behalf. In the screening report, Mr. Martin asked for testimony from Dr. Talbot, who is listed on the Conduct Report as witnessing the incident. *See* Dkt. 11-1. Mr. Martin also asked for IDOC employees Officer Shehala, MHP Purdue, C. Stephens, Lt. Ernest, and Cpt. Councellor to be witnesses. Dkt. 11-2. Dr. Talbot provided a statement that he did not see anything. Dkt. 11-6. He stated that he was in the exam room, and that anything that happened would have been outside of the exam room. *Id.* Mr. Martin was not denied this witness.

Mr. Martin argues in his reply that the remaining witnesses were present during the incident, *see* dkt. 17 at 8-9, but the Warden argues they were not, dkts. 11 at 11 & 11-2. The Court's review of the video evidence does not indicate that other persons were present. *See* dkt. 16. But even if the witnesses were present, what exculpatory purpose or evidence they would have provided is not explained by Mr. Martin. "Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)).  However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

On the disciplinary record now before the Court, the testimony or statements of these witnesses would be irrelevant. Mr. Martin's argument that he was denied  witnesses is meritless.

Fifth, Mr. Martin argues that he was denied the right to present evidence. He asked for the video evidence, the nurse records for Officer Locke's injury, a grievance he had filed, and "all narratives from this incident from computer hard drives." Dkt. 11-2. The video evidence was reviewed and a written report prepared. Thus Mr. Martin was not denied that relevant evidence.

Additionally, the Court's review of the video evidence comports with the video review report. *See* dkt. 16. There is nothing exculpatory in the video, and therefore the written report of the video review provided all necessary information to Mr. Martin.

The nurse records of Officer Locke's injury were denied as irrelevant. *Id.* The Court agrees that such records are irrelevant. The seriousness or scope of injury is immaterial to whether a battery occurred. Battery is defined by the IDOC Adult Disciplinary Code as "[k]nowingly or intentionally *touching* another person . . . ." Dkt. 11-10 at 1 (emphasis added). A nurse's report of treating an injury would not be relevant to whether a mere touching had occurred.

Narratives about the incident were provided to Mr. Martin in the conduct report and the video review report. No other narratives are known to exist and Mr. Martin identified who may have prepared such narratives or what exculpatory information these narratives would contain. Additionally, a generalized request for information stored on a computer hard drive is, without more, too speculative to suggest its relevance. Even so, the hearing officer construed the request to mean emails regarding Mr. Martin, confidential case notes, and use of force reports. These materials were deemed irrelevant and not exculpatory. Dkt. 11-12. Mr. Martin provides no explanation of what exculpatory evidence he thought would be on the hard drive. Thus, with no credible argument that the hard drives contained any narrative of the incident that could be exculpatory, Mr. Martin's request for this material was a "fishing expedition," and the refusal to provide it was not a due process violation. If any error occurred, it was harmless error given the remaining evidence supporting the hearing officer's decision. *Piggie*, 344 F.3d at 678 (holding that harmless error analysis applies to due process violations in prison disciplinary habeas corpus cases). Mr. Martin's argument that he was denied evidence is without merit.

Sixth, Mr. Martin argues that he was denied video evidence. Dkts. 1 & 17. This contention was discussed above and is without merit.

Habeas corpus relief on the due process claims contained in Mr. Martin's first ground for relief is **denied**.

**Ground Two**

Mr. Martin argues in his second ground for relief that there is insufficient evidence to support the hearing officer's decision, that no hearing was conducted, and that exculpatory evidence was withheld from him. Dkt. 1 at 2. The Court has already addressed the "no hearing" argument. In this section of this Order, the Court will address the sufficiency of the evidence and the exculpatory evidence contentions.

The exculpatory evidence argument appears to be based in part on Mr. Martin's contention that Officer Locke did not write a witness statement, no other officers wrote statements, and Dr. Talbot saying he did not see anything. Dkt. 1 at 2. The prison staff could not violate Mr. Martin's rights by withholding evidence that did not exist. *See Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). As noted above, though, Mr. Martin has not met his burden of indicating what testimony these witnesses would have provided that would be material and exculpatory. There is no showing that exculpatory evidence exists, much less that such any evidence was withheld. Mr. Martin's argument is without merit.

As to Mr. Martin's contention that there is insufficient evidence to support the hearing officer's decision, that contention is wholly without merit. Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some

evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

In assessing whether there is *some* evidence – *any* evidence – the Court does not re-weigh the evidence nor does it assess the credibility of any witnesses. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Hill*, 472 U.S. at 455 (noting that the "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence"). The Seventh Circuit has "characterized the 'some evidence' standard as a 'meager threshold.' . . . Once that threshold is crossed, we will not reverse." *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 941). Here, Officer Locke's conduct report provides *some* evidence to support the hearing officer's decision. Thus, the meager threshold of evidence sufficiency has been crossed, signaling the end to this Court's evidentiary review.

Mr. Martin's second ground for habeas corpus relief is without merit, and relief on these contentions is **denied**.

### Ground Three

In his last ground for habeas corpus relief, Mr. Martin contends his conduct report was written in retaliation for his filing of grievances. The motivation for bringing disciplinary charges is not a ground for habeas corpus relief. Once the Warden has afforded a petitioner the limited due

process required by *Wolff*, and any sufficiency of the evidence issue is resolved, this Court's review ends, and the motive for bringing the charge is irrelevant. *See McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (per curiam) (prison disciplinary habeas corpus review limited to *Wolff* due process and sufficiency of the evidence concerns).

**New Issues Raised in Reply**

New grounds for relief raised for the first time in a reply are waived. *See Wonsey v. City of Chi.*, 940 F.3d 394, 398-99 (7th Cir. 2019) (holding that arguments raised for the first time in a reply brief are waived). All arguments for habeas corpus relief must be presented in the petition. *Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006). Therefore, the Court will not entertain any new arguments Mr. Martin presents in his reply.

As far as the offender declarations or affidavits Mr. Martin now submits in his reply, they address the sufficiency of the evidence. At best, Mr. Martin present statements that are contrary to Officer Locke's account. This Court cannot reweigh the evidence or make credibility determinations, which is what Mr. Martin proposes the Court should do in crediting the affidavits. *See Webb*, 224 F.3d at 652. Any failure of the IDOC to follow its own policies in the course of prosecuting this disciplinary action is not a federal due process violation. *See Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Habeas corpus relief on ground three of the petition is **denied**.

**D.   Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Martin to the relief he seeks.

Accordingly, Mr. Martin's petition for a writ of habeas corpus must be **denied** and the action **dismissed** with prejudice. Final judgment consistent with this Order shall now issue.

      **IT IS SO ORDERED.**

Date: 1/11/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Anthony C. Martin
945288
Wabash Valley Correctional Facility - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
Carlisle, IN 47838

David Corey
Indiana Attorney General
david.corey@atg.in.gov